UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES ARTHUR ROSE,

                **Plaintiff,**                **CIVIL ACTION NO. 12-11336**

     **vs.**

                                     **DISTRICT JUDGE THOMAS L. LUDINGTON**

**COMMISSIONER OF**             **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

                **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.     RECOMMENDATION:**  This Court recommends that Plaintiff's motion for summary judgment (docket no. 13) be **GRANTED**, Defendant's motion for summary judgment (docket no.17) be **DENIED**, and this matter be reversed and remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**II.     PROCEDURAL HISTORY:**

Plaintiff filed an application for a period of disability and disability insurance benefits in January 2009, alleging disability beginning February 19, 2008.  (TR 165-66).  The Social Security Administration denied benefits and Plaintiff filed a timely request for a *de novo* hearing.  On February 14, 2011 Plaintiff appeared with counsel in Detroit, Michigan and testified at a video hearing held by Administrative Law Judge (ALJ) Charles L. Brower, who presided over the hearing from San Antonio, Texas.  (TR 39-85).  Vocational Expert (VE) Dr. Robert Babcock, Ph.D., participated in the hearing via telephone from Columbia, South Carolina.  (TR 41).  During the hearing, Plaintiff amended his alleged disability onset date to April 1, 2010.  (TR 62-63, 69).  In a

June 2, 2011 decision the ALJ found that Plaintiff was not entitled to disability benefits because he remained capable of performing a significant number of jobs existing in the national economy. The Appeals Council declined to review the ALJ's decision and Plaintiff filed a timely complaint for judicial review. The parties filed cross motions for summary judgment which are currently before the Court.

## III.     HEARING TESTIMONY AND MEDICAL EVIDENCE

### A.     Hearing Testimony

Plaintiff was less than two months short of forty-eight years old on his amended disability onset date. He completed schooling through the eighth or ninth grade and participated in special education courses. He testified that he is only able to read and write very simple words. (TR 73). Plaintiff was previously employed as a tree trimmer and boiler maker. (TR 43, 45). He was involved in a motor vehicle accident in July 2007 and claims that he injured the left side of his body to include the left side of his neck, left shoulder and left knee. (TR 43, 46). He testified that he has three ruptured discs and his left shoulder burns continuously with radiating pain and numbness in his fingertips. (TR 43, 45). After his car accident Plaintiff took a job as a boiler maker but was later injured in a work-related accident. (TR 45, 58).

Plaintiff testified that he has bipolar disorder and unprovoked outbursts. (TR 43). He testified that once every other month or so his physical pain becomes so unbearable that he has to go to the hospital emergency room for a pain shot. (TR 47). His attorney stated that Plaintiff has cervical radiculopathy with disc herniation and bulging discs, spondylosis of the neck, left shoulder acromioclavicular arthrosis with possible impingement syndrome, degenerative joint disease of the left knee, hypertension, bipolar disorder and panic disorder. (TR 44).

2

**B.      Medical Evidence**

Defendant states that "[t]he ALJ and Plaintiff adequately presented the medical evidence in this case." (Docket no. 17 at 3). Thus, while the Court has independently reviewed the medical record, it will adopt the medical summary as set forth in Plaintiff's brief and the ALJ's decision.

**IV.     VOCATIONAL EXPERT TESTIMONY**

The VE testified that Plaintiff's past employment as a boiler maker was heavy, skilled labor, his past work as a tree trimmer was heavy, semi-skilled work, and his past work as a truck driver was medium, semi-skilled work. (TR 70-71). The ALJ asked the VE to testify whether jobs were available for an individual with Plaintiff's age, education, and past work experience who had the physical limitations described in the State Agency physical residual functional capacity ("RFC") contained in exhibit 13F and who had the mental limitations described in the mental RFC in exhibit 16F. (TR 71-72). he ALJ clarified that the State Agency RFC restricts the use of Plaintiff's left hand for gross and fine motor manipulations and limits above shoulder reaching with the left upper extremity. The VE testified that the RFC calls for unskilled light jobs with only occasional use of the left hand and arm. (TR 73, 75). He testified that with this RFC Plaintiff could perform sedentary work as a food and beverage order clerk, comprising 2,500 jobs in the Detroit area and 60,000 jobs nationally. (TR 75). The VE further testified that it would be very difficult for a person to attend to and complete a task if he was in such severe pain that it interfered with his concentration, persistence or pace on a continuing basis.

**V.      ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

During the administrative hearing the ALJ announced that he would issue a conditional bench decision in Plaintiff's favor made contingent upon Plaintiff's post-hearing submission of a

3

medical source opinion from Plaintiff's primary care physician that corroborated the bench decision. (TR 68, 83-84).  The ALJ stated in his bench decision that Plaintiff's impairments of disorder of the cervical spine with radiculopathy, disorder of the left shoulder, and bipolar disorder reduced Plaintiff's RFC to less than a full range of sedentary work.  (TR 68-70).  The ALJ informed Plaintiff and Plaintiff's counsel that he would not publish the bench decision if the post-hearing medical submissions did not corroborate the decision.  TR 69).

Plaintiff failed to submit post-hearing medical records that corroborated the conditional bench decision.  Consequently, the ALJ issued a written decision finding that Plaintiff was not under a disability from the alleged disability onset date of April 1, 2010 through the date last insured of June 30, 2010.  The ALJ found that although Plaintiff had not engaged in substantial gainful activity between April 1, 2010 and June 30, 2010, and suffered from the severe impairments of disorder of the cervical spine with radiculopathy, disorder of the left shoulder, and bipolar disorder, he did not have an impairment or combination of impairments that meets or medically equals a listed impairment.  (TR 13-20).  The ALJ found that Plaintiff retained the RFC to perform light work with the following limitations: (1) frequently able to climb ramps/stairs and balance, (2) occasionally able to climb ladders/ropes/scaffolds, stoop, kneel, crouch, and crawl, (3) occasionally able to handle and finger with the left hand, (4) no reaching above shoulder level with the left upper extremity, (5) avoid concentrated exposure to vibration and hazards such as machinery and heights, and (6) with moderate difficulties in his ability to carry out detailed instructions and maintain attention and concentration for extended periods.  (TR 20-31).  The ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act through the date last insured because he remained capable of performing a significant number of jobs existing in the national economy.  (TR 32-33).

## VI.     LAW AND ANALYSIS

### A.     Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions.  Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards.  *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B.     Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis.  In the first four steps, Plaintiff was required to show that:

1.  he was not engaged in substantial gainful employment; and
2.  he suffered from a severe impairment; and
3.  the impairment met or was medically equal to a "listed impairment;" or
4.  he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented him from doing his past relevant

5

work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work.  If he could not, he would be deemed disabled.  20 C.F.R. § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments.  *Id.* (citations omitted).

**C.    Analysis**

Plaintiff makes a number of arguments including that the ALJ made an improper step two determination, he erred in failing to find Plaintiff disabled under listing 12.04, he failed to provide a full and fair administrative hearing, and he made an improper RFC determination, credibility assessment, and step five finding.

*1.    The Step Two Determination*

Plaintiff argues that the ALJ erroneously found that his Wolff-Parkinson-White syndrome, carpal tunnel syndrome, hypertension, and chronic obstructive pulmonary disease were nonsevere at step two of the five-step sequential analysis.  It is well-established that the finding of severe impairments at step two is a threshold determination.  "[O]nce any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps" and it becomes "legally irrelevant" that other impairments are not considered severe.  *McGlothin v.*

*Comm'r*, 299 Fed. Appx. 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008)). This is so because the second step is designed simply to screen out and dispose of baseless claims, which it accomplishes by testing whether the claimant has any severe impairment or combination of impairments which significantly limits her physical or mental ability to do basic work activities. *Anthony v. Astrue*, 266 Fed. Appx. at 457.

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted).

The ALJ found at step two of the five-step sequential analysis that Plaintiff's cervical spine disorder with radiculopathy, left shoulder disorder, and bipolar disorder constituted severe impairments. At the same time he found that Plaintiff's hypertension, Wolff-Parkinson-White syndrome, carpal tunnel syndrome, and chronic obstructive pulmonary disease were nonsevere through the date last insured. The ALJ made this determination after he reviewed the medical evidence pertaining to Plaintiff's impairments of hypertension, Wolff-Parkinson-White syndrome, carpal tunnel syndrome, and chronic obstructive pulmonary disorder. The ALJ found that while Plaintiff received treatment and medication for his hypertension prior to his amended alleged onset date, he did not monitor his blood pressure outside of his doctor's office and he reported no complications involving shortness of breath, chest pain, dyspnea on exertion, pedal edema, or headache. The ALJ found that the same was true after the amended onset of disability date, where

7

Plaintiff again did not take his blood pressure outside of the office and denied having symptoms associated with high blood pressure or complications from his blood pressure medication. (TR 16). The ALJ reasonably concluded that the record does not show that Plaintiff's hypertension significantly restricted his abilities to perform basic work functions.

With regard to the Wolff-Parkinson-White syndrome, the ALJ acknowledged that Plaintiff sought medical advice for symptoms including palpitation and mild dizziness. On the other hand, he also noted that Plaintiff's echocardiogram results revealed normal left ventricular systolic function and his results from a Holter monitor reading revealed a few episodes of fast heartbeats but otherwise no significant ventricular or supraventricular dysrhythmia or evidence of cardiac pauses. (TR 16, 575, 577-78). The ALJ reasonably concluded based on substantial evidence in the record that Plaintiff's Wolff-Parkinson-White syndrome did not significantly limit his physical ability to perform basic work activities during the period from the amended alleged onset of disability date through the date last insured.

The ALJ drew similar conclusions after reviewing the evidence associated with Plaintiff's carpal tunnel syndrome and chronic obstructive pulmonary disease. The ALJ found that there was a twenty month gap in treatment for Plaintiff's carpal tunnel syndrome and a complete absence of treatment for the disorder during the relevant time period between the amended onset date and the date last insured. The ALJ reasonably concluded that the record did not support a finding that Plaintiff's carpal tunnel syndrome significantly limited his ability to perform basic work activities during the relevant time frame. As for his chronic obstructive pulmonary disorder, the ALJ discussed evidence showing that Plaintiff's lungs were clear to auscultation, he had no acute pulmonary disease, no pneumothorax, and a normal cardiomediastinal silhouette during the relevant

time frame. (TR 17). The ALJ recognized that pulmonary function studies performed after the date last insured showed very severe obstruction premedication, but concluded that the evidence did not support a finding that Plaintiff's chronic obstructive pulmonary disorder significantly limited Plaintiff's ability to work prior to the date last insured.

The Court finds that the ALJ's conclusion that Plaintiff's hypertension, Wolff-Parkinson-White syndrome, carpal tunnel syndrome, and chronic obstructive pulmonary disease were nonsevere impairments between April 1, 2010 and June 30, 2010 is supported by substantial evidence in the record and should not be disturbed.

2.    *Listing 12.04 Affective Disorders*

Next, Plaintiff argues that the ALJ should have found him disabled under listing 12.04 because he had marked restrictions in his ability to maintain concentration, persistence, or pace and in social functioning. He further claims that the ALJ failed to thoroughly evaluate whether the combined effects of Plaintiff's disabilities entitled him to a finding that his mental impairments are functionally equivalent to listing 12.04, and he claims that the ALJ erroneously relied upon a State Agency mental RFC assessment that was conducted by an ophthalmologist.

Listing 12.04 is found in 20 C.F.R. Part 404, Subpart P, Appendix 1. It is divided into three paragraphs, A, B, and C. The ALJ found that Plaintiff's bipolar disorder met the A criteria of the listing but that the evidence failed to establish the presence of the paragraph B and C criteria. Plaintiff challenges the ALJ's findings with regard to the B criteria only.

To satisfy the B criteria of listing 12.04, the claimant must show that he has at least two of the following limitations: (1) marked restrictions of activities of daily living; (2) marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining concentration, persistence,

or pace, or (4) repeated episodes of decompensation each of extended duration.

The ALJ found only mild restrictions in activities of daily living. (TR 18). He reached this conclusion in part by relying upon adult function reports completed by Plaintiff and his wife as part of Plaintiff's benefits application packet. The ALJ was struck by the fact that Plaintiff and his wife acknowledged Plaintiff's limited activities, but attributed the limitations to his physical pain and not to his mental condition. (TR 18, 206-13, 230-37). Indeed, Plaintiff's wife reported that Plaintiff lays on the couch most of each day because of shoulder and neck pain. (TR 206). Both adult function reports state that Plaintiff's shoulder pain causes him to have some difficulty with dressing. In all other respects the reports indicate that Plaintiff has no problem attending to his personal needs. (TR 207, 231). Both reports state that Plaintiff does no house or yard work because of physical pain. (TR 209, 233). Notably, neither report makes any mention of any mental impairment that restricts Plaintiff's activities in any way.

In addition to the adult function reports, the ALJ relied upon a psychiatric medical report completed by Dr. Gayle Brannon, Ph.D., LLP and Dr. James Day, Ph.D., LP. (TR 434-37). The doctors noted that Plaintiff arrived on time for the appointment, he was cooperative, and he was casually and appropriately dressed. He reported that he was responsible for his basic needs. He also failed to indicate that he had sought out previous mental health treatment despite claiming that his mind races and he has a difficult time concentrating. The ALJ concluded that the evidence suggested that Plaintiff had only mild limitations in activities of daily living. Despite Plaintiff's claims of error, there is little evidence to suggest that Plaintiff had marked limitations in his activities of daily living caused by mental impairments between April 1, 2010 and June 30, 2010.

Next, the ALJ found that Plaintiff had mild difficulties in social functioning, citing the fact

10

that Plaintiff has a long term marriage, three children, and he reported spending time with others in person and on the phone on a daily basis. (TR 18). The ALJ noted that Plaintiff reported that he stays to himself because of pain and he finds it difficult to get along with everyone but reasonably concluded that Plaintiff did not attribute these difficulties to any mental condition. Although Plaintiff claims that a medical report dated January 22, 2011 supports his argument that he has difficulty getting along with others, he suffers mood swings, anger episodes, irritability, isolated social relationships, and poor impulse control, the report does not show that he suffered from these conditions during the relevant three month period between April 1, 2010 and June 30, 2010. (TR 602-05).

Last, the ALJ concluded that Plaintiff had only mild difficulties with concentration, persistence, or pace, and no episodes of decompensation. (TR 19). The ALJ noted that Dr. Day's evaluation showed that Plaintiff exhibited poor concentration and attendance to task and he displayed some difficulty in his sensory and mental capacities. However, the ALJ also recognized that Plaintiff's wife reported that Plaintiff could pay attention for long periods of time, follow written and verbal instructions well, and handle stress and changes in routine without difficulty. In addition, the record shows that Plaintiff has sufficient concentration to allow him to play cards and spend a substantial amount of time each day watching television. The ALJ reasonably concluded that Plaintiff has mild deficiencies in concentration, persistence, or pace. He also concluded that there was no evidence that Plaintiff suffered episodes of decompensation for extended durations of time.

Plaintiff next faults the ALJ for failing to find a listing level disability based on Dr. Brannon and Dr. Day's GAF assessment of 45. However, neither the Commissioner nor the Sixth Circuit

11

requires the Commissioner to give GAF scores any weight and in fact have stated that GAF scores have no "direct correlation to the severity requirements of the mental disorders listings." *Kennedy v. Astrue*, 247 Fed. Appx. 761, 766 (6th Cir. 2007) (citations omitted). Plaintiff also argues that the ALJ erroneously relied on a State Agency assessment that was completed by an ophthalmologist. Yet Plaintiff failed to provide documentation to support his statement that the Agency physician, Dr. Nighat Khan, was an ophthalmologist. Furthermore, Plaintiff has not given the Court any reason to ignore the fact that Dr. Khan documented a medical specialty code next to his signature that correlates to psychiatry. *See* Program Operation Manual System ("POMS") DI 26510.090 (identifying specialty code 37 as referring to psychiatry). There is no reason for the Court to believe that Dr. Khan completed the psychiatric review technique in any capacity other than as a psychiatrist.

Finally, Plaintiff argues that the ALJ failed to make a thorough consideration of all of his medical impairments in determining whether his condition was medically equivalent to any paragraph of listing 12.04. The ALJ is required to "review all evidence of impairments to see if the sum of impairments is medically equivalent to a 'listed impairment' " but he is not required to "articulate, at length, the analysis of the medical equivalency issue." *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411 (6th Cir. 2006). Here, the ALJ noted that he carefully considered the entire record and reviewed evidence pertaining to both severe and nonsevere impairments. The ALJ then stated that Plaintiff's mental impairment did not meet or medically equal the criteria of listing 12.04. The ALJ did not err in failing to articulate every consideration that went into the step three determination, nor did he err in finding that Plaintiff failed to meet his step three burden of showing that he was disabled under listing 12.04.

3.      *Full and Fair Hearing, the RFC, Assessment of Plaintiff's Credibility, and Step Five Determination*

Plaintiff next asserts that the ALJ neglected to provide a full and fair hearing and failed to perform a function-by-function assessment of his severe impairments.  (Docket no. 13 at 11-12).  He also challenges the ALJ's RFC determination, credibility assessment, and step five finding.

Social security proceedings are inquisitorial, not adversarial.  *Sims v. Apfel,* 530 U.S. 103, 110–11 (2000).  Consequently, an ALJ has an affirmative duty to investigate the facts and develop the arguments both for and against granting benefits.  *Id.*  The ALJ bears this burden whether or not the claimant is represented by legal counsel at the administrative hearing.  *Sutton v. Comm'r*, No. 12-11043, 2013 WL 1117867, at *4 (E.D. Mich. Jan. 28, 2013) (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993)).  However, when a claimant is not represented by counsel, the ALJ has a heightened or "special duty" to develop the record and "to be especially probing in his questioning" to ensure a fair hearing for the claimant.  *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983).

Here, although the administrative hearing itself was lengthy, Plaintiff's testimony was truncated. A review of the hearing transcript shows that the ALJ spent much of the hearing in a dialogue with Plaintiff's counsel, rather than in direct questioning of Plaintiff.  Subsequently, after a fairly comprehensive review of the evidence, the ALJ stated that he was prepared to issue a bench decision in Plaintiff's favor with a finding that Plaintiff was disabled from the amended alleged onset date of April 1, 2010 through the date last insured of June 30, 2010.  Indeed, the ALJ stated that he was ready to rule that Plaintiff's severe impairments of cervical spine disorder with radiculopathy, left shoulder disorder, and bipolar disorder reduced his RFC to less than a full range of sedentary work.  Although the ALJ stated that he had considerable misgivings about Plaintiff's

13

claim because of the "wealth of evidence" that did not support the claim and because of evidence showing drug seeking behavior, he claimed that he had "gotten past all of that" and was prepared to give Plaintiff the benefit of the doubt and issue a favorable bench decision. Granted, the ALJ conditioned publication of the bench decision on Plaintiff's submission of post-hearing medical evidence from his primary care physician that corroborated the opinion. However, the undersigned suggests that the ALJ's comments during the hearing were misleading and gave the impression that the ALJ had reviewed the evidence and had come to the conclusion that he could in good faith issue an opinion in Plaintiff's favor despite the evidence undermining the claim. When Plaintiff did not submit his post-hearing medical evidence from his primary care physician, the ALJ issue a lengthy written opinion denying Plaintiff's claim based on the very evidence he claimed he had come to terms with.

At one point in the hearing Plaintiff's counsel stated that he believed it was necessary to further develop Plaintiff's testimony and make inquiry into many issues that had not been discussed. (TR 76). Instead of proceeding with the questioning the ALJ instructed Plaintiff's counsel to make an offer of proof on the record. Counsel did just that, but made the offer of proof after the ALJ had issued his conditional bench decision and after the ALJ had elicited testimony from the VE. In fact, the ALJ dismissed the VE from further participation in the hearing before the hearing concluded and arguably even before Plaintiff's counsel finished his offer of proof. (TR 79).

In addition to the above, the ALJ in his questioning of the VE made only a perfunctory reference to the mental RFC at exhibit 16F. The mental RFC to which the ALJ referred found that Plaintiff was moderately limited in his ability to carry out detailed instructions and maintain attention and concentration for extended periods of time. (TR 467-68). Despite referencing the

14

mental RFC, the ALJ made no attempt to clarify the VE's testimony when the VE stated that a person whose condition interfered with his concentration, persistence, or pace on a continuing basis would have a difficult time completing a task.  It is not clear from the record whether Plaintiff's moderate concentration deficits occur on a "continuing basis" and thus make it difficult for him to complete a task and sustain competitive employment as the VE described.

Although the ALJ did not have a "special duty" to develop the record in this case because Plaintiff was represented by counsel, he did have a duty to ensure that Plaintiff received a full and fair hearing.  The undersigned suggests that the unusual procedure taken in this case deprived Plaintiff a full and fair hearing.  In light of the above, the Court recommends that the Commissioner's decision be reversed and this matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g).  Upon remand, the Commissioner should hold a *de novo* administrative hearing on Plaintiff's disability claim.  Based on the evidence of record and the testimony elicited in the hearing, the ALJ should reassess Plaintiff's credibility and re-evaluate steps four and five of the sequential analysis.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir.

15

1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: May 31, 2013                 s/ Mona K. Majzoub
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated:  May 31, 2013                 s/ Lisa C. Bartlett
                                    Case Manager